

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ALK
F. #2020R00275

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 10, 2022

By ECF

The Honorable Ann M. Donnelly
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     United States v. Donnell Russell
        Criminal Docket No. 20-427 (AMD)

Dear Judge Donnelly:

The government respectfully submits this letter in connection with the sentencing of the defendant Donnell Russell ("Russell" or the "defendant") scheduled for November 17, 2022 at 11:00 a.m. On July 26, 2022, the defendant pleaded guilty to the sole count of the Indictment, which charged him with interstate stalking in violation of 18 U.S.C. § 2261(A)(2)(B). For the reasons set forth below, a sentence within the undisputed applicable United States Sentencing Guidelines ("Guidelines") range of 24 to 30 months' imprisonment is warranted in this case.

I.      The Offense Conduct

As set forth in the Presentence Investigation Report ("PSR") and described below, between November 2018 and February 2020, Russell, a self-described manager, advisor and friend of Robert Sylvester Kelly, also known as "R. Kelly," repeatedly harassed and intimidated Jane Doe and her mother after Jane Doe filed a civil lawsuit against Kelly. Specifically, Russell threatened to publicly reveal sexually explicit photographs of Jane Doe and to publicly reveal her purported sexual history if she did not withdraw a lawsuit against Kelly and "cease her participation and association with the organizers" of a "negative campaign" against Kelly.

By way of background, and as the Court knows from evidence introduced at trial in United States v. Kelly, No. 19 CR 286 (S-3)(AMD) ("Kelly"), including testimony from Jane Doe, see Tr. 2123-321, Jane Doe met Kelly at one of his concerts in approximately March 2017, when she was 19 years old. In the ensuing months, Kelly used force and threats of force to obtain sexual services from Jane Doe, including, for example, displaying a firearm while he demanded

Jane Doe give him oral sex.  Jane Doe ultimately learned that she had contracted an infectious venereal disease during the course of her relationship with Kelly.

On May 21, 2018, Jane Doe, through counsel, filed a lawsuit against Kelly in New York County Supreme Court (the "Lawsuit").  The Lawsuit alleged multiple causes of action against Kelly related to Kelly's sexual interactions with Jane Doe, including sexual battery, civil battery, negligence and gross negligence, intentional infliction of emotional distress, fraud/concealment, and false imprisonment.  The Lawsuit sought general and special damages, compensatory damages, punitive and exemplary damages in amounts to be determined at trial, as well as costs and reasonable attorneys' fees from Kelly.  The Lawsuit included the address for Jane Doe's then-attorney in Brooklyn, New York.

In November 2018, Russell caused a letter, with attachments, apparently signed by Kelly, to be mailed to Jane Doe's attorney in Brooklyn, New York.[1]  The letter stated, among other things, the following:

> Please advise [Jane Doe], your client to abandon this heartless effort to try to destroy my musical legacy for selfish, personal enrichment. If she persists in court action she will be subjected to public opinion during the discovery process.  For example, my law team is prepared to request the production of the medical test results proving the origin of her STD claim, as well as 10 personal male witnesses testifying under oath about her sex life in support of her claim and complete records of her text/face time message exchanges, which will be reviewed to match and be authenticated by the recipient to insure there are no omissions or deletions.
>
> If [Jane Doe] really cares about her own reputation she should cease her participation and association with the organizers of this negative campaign.  Counter actions are in the developmental stages and due to be released soon.

The first attachment to the letter ("Attachment 1") was titled, "Here's [Jane Doe], your client." Attachment 1 contained three screenshots of Jane Doe from televised interviews.  Below those photographs, the attachment read, "Here's a sample of the real [Jane Doe].  Remember she lives in Texas, so her claim of being intimidated falls flat because these pics were sent via text."  Below that, Attachment 1 included cropped nude photographs of Jane Doe, including a close-up photograph of Jane Doe's face and the top portion of her exposed breasts, including a partial

---

[1]    Also enclosed in the envelope were a one-page "Notice of Delivery" signed by "June Barrett," the defendant's mother, and a copy of the cover page for the Lawsuit, a Summons in the Lawsuit addressed to Kelly and the first page of the Verified Complaint and Demand for Jury Trial for the Lawsuit, with the following stamp affixed to each document: "I DO NOT ACCEPT THIS OFFER TO CONTRACT AND I DO NOT CONSENT TO THESE PROCEEDINGS," with Kelly's apparent handwritten signature and a State of Illinois Notary stamp and signature for "June A. Barrett" dated October 29, 2018.

portion of her nipple area; and a photograph of Jane Doe kneeling on a bed, which included a partial portion of her exposed buttocks.  Attachment 1 stated that the "pictures ha[d] been cropped for the sake of not exposing her extremities to the world, yet!!!"[2]  The second attachment to the letter ("Attachment 2") consisted of three photographs of text message exchanges between Jane Doe and Kelly.  In the exchanges, Kelly is called "Daddy."  Above the photographs of the exchanges, Attachment 2 read: "Ms. [Jane Doe's] usage of 'daddy' is/was her choice!  It's very interesting how the difference in age only becomes a factor when things didn't go as she planned."

In December 2018 and January 2019, Russell, using his alias "Colon Dunn," sent a series of threatening and harassing text messages to Jane Doe and her mother.[3]  Specifically, on December 21, 2018, Russell sent messages containing the same photographs of Jane Doe that were included in Attachment 1, and stating "Just a sample.  We will seek criminal charges.  You've been warned."  Thereafter, Russell sent additional messages stating, "Publishing soon" and "[T]his is Colon.  My investigation will be done soon enough."  On January 3, 2019, Russell sent additional text messages to Jane Doe and her mother, stating, "Pull the plug or you will be exposed."

On January 6, 2019, Russell followed through on his threats.  Using the "Colon Dunn" alias, Russell created a Facebook Page named "Surviving Lies," a play on the title of Lifetime's "Surviving R Kelly" documentary, and posted screen shots of text messages between Kelly and Jane Doe, which contained the same sexually explicit photographs of Jane Doe.  The "Surviving Lies" Facebook page was closed by Facebook on January 7, 2019.  Media reports indicated that Facebook deactivated the "Surviving Lies" Facebook page after posts targeting Jane Doe and another of Kelly's accusers were posted on the page.  A January 7, 2019 article from the Daily Mail included certain screen shots from the "Surviving Lies" Facebook page that were posted on the page before it was taken down.  Those screenshots included some of the same photographs of text message exchanges between Jane Doe and Kelly in Attachment 2, including one where an address is disclosed.  In addition, the Daily Mail article stated that "cropped images" of the same woman were also posted on the Facebook page allegedly showing Kelly "her breast augmentation following surgery."  A search warrant return from Facebook also confirmed that the same screen shots of text message exchanges between Kelly and Jane Doe that were sent to Jane

---

[2]      At trial in Kelly, the government admitted into evidence text messages between Kelly and Russell's mother, June Barrett.  See Tr. 2666-93; GXs 348(a), 348(b) (These text messages were also produced to Russell in discovery as DX 36a, DX 36b).  Those text messages showed that, on October 26, 2018, Kelly provided Barrett with the sexually explicit photographs of Jane Doe that were included in Attachment 1 and sent to Jane Doe's then-attorney.  Barrett responded to Kelly, "Do you have a way of sending me one more picture showing her phone number at the top?  I'm going to print it and include it, along with the other 3 and included them in the letter to her attorney."  It is thus clear from the documentary evidence recovered from Kelly's own cell phone that Kelly was involved in the scheme to harass and intimidate Jane Doe and her mother from its inception and, indeed, provided the very photographs used to threaten Jane Doe and her mother.  The PSR should be amended accordingly.  See PSR ¶ 22.

[3]      At trial in Kelly, Jane Doe's mother testified about these text messages, which were admitted into evidence.  See GXs 230(a), 230(b); Tr. 2401-09.  (The messages were also produced to Russell in discovery as DX 35.)

Doe's attorney were posted by its creator (Russell) on the Surviving Lies Facebook page and that Facebook deleted certain photographs from the page after they were posted by the creator (Russell). Comments from Facebook users on the page reacting to the posting of the photographs made clear that the photos were sexually explicit.

In late January 2020, Russell appeared on two live interviews with "vloggers" supporting Kelly and discussing Kelly's legal troubles, which were streamed live on the internet via YouTube. During the first interview, Russell introduced himself as Kelly's "advisor, consultant [and] friend" and indicated that he had known Kelly for "going on 30 years now." Thereafter, during the interview, Russell discussed Jane Doe and the Lawsuit, holding up copies of items that had been sent to Jane Doe's attorney, described above. While holding up the first attachment to the camera, Russell stated "That's my commentary at the bottom"– referring to the text that appears below the four photographs. Notably, Russell held the portion of the attachment that included the photograph of Jane Doe's exposed buttocks and breast to the camera for a period of time, effectively publishing it again for the viewing public to see. During the second interview, Russell again held up copies of items that had been sent to Jane Doe's attorney, described above. While holding up both attachments, Russell stated: "we sent" these documents "to the lawyer." Russell further stated "these are the pictures of her [Jane Doe] that we sent. These are the texts messages of her that we sent." Notably, Russell engaged in this portion of his harassing and intimidating conduct approximately six months after Kelly had been indicted on serious federal criminal charges in this District and it was clear that Jane Doe was one of the charged victims in Kelly's federal criminal case.

II.      The Guidelines Calculation

The government agrees with the Guidelines calculation set forth in the PSR, which mirrors the calculation in the parties' plea agreement and is below:

|  |  |  |
|---|---|---|
| Base Offense Level (§ 2A6.2(a)) |  | 18 |
| Plus: | Offense involved a pattern of activity involving stalking, threatening, or harassing the same victim (§ 2A6.2(b)(1)(E)) | +2 |
| Less: | Acceptance of responsibility (§ 3E1.1(a)) | -3 |
| Adjusted Offense Level: |  | 17 |

PSR ¶¶ 29-38. Based on a total offense level of 17 and a criminal history category of I, the applicable Guidelines range is 24 to 30 months' imprisonment. Id. ¶ 113.

4

III.     A Guidelines Sentence is Warranted

   The government respectfully submits that a sentence within the undisputed applicable Guidelines range of 24 to 30 months' imprisonment is warranted in this case.

   Title 18, United States Code, Section 3553(a) requires sentencing courts to consider a number of factors in imposing sentence, including the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the violation, promote respect for the law, and provide just punishment; the need for the sentence to adequately deter criminal conduct; the need to protect the public from further crimes of the defendant; and the need to provide the defendant with needed education, vocational training, medical care and/or other correctional treatment in the most effective manner. Sentencing courts must also consider the kinds of sentences available, the applicable Guidelines and pertinent policy statements, and the need to avoid unwarranted sentencing disparities.

   The Section 3553(a) factors weigh overwhelmingly in favor of a Guidelines sentence here. First, the nature and circumstances of the offense are abhorrent. In a blatant attempt to force Jane Doe to dismiss the Lawsuit and stop speaking publicly about Kelly, the defendant harassed and threatened her repeatedly for over a year, including through lengthy YouTube interviews after it was clear that Jane Doe was a charged victim in Kelly's criminal case in this District and would likely testify against Kelly. Not only did the defendant threaten to publicly reveal sexually explicit photographs of Jane Doe, which is serious conduct standing alone; he made good on that threat. He publicly posted sexually explicit photographs of Jane Doe and her text message exchanges with Kelly to Facebook. Countless individuals saw those photos and text messages, and media outlets further disseminated them. The harm the defendant caused to Jane Doe and her mother cannot be overstated. What is more, when Jane Doe still did not dismiss the Lawsuit, the defendant persisted. He appeared on YouTube livestream interviews with hundreds of followers on two separate occasions and held up the cropped sexual images of Jane Doe and her messages with Kelly while discussing the Lawsuit and the federal criminal charges pending against Kelly. Those livestream interviews remained available on YouTube for a significant period of time after the interviews took place and one of the videos remains accessible on the Internet to this day. Put simply, the defendant's conduct was egregious. Indeed, some of it may well have amounted to witness intimidation. Over more than a year, he relentlessly threatened and harassed Jane Doe without remorse. A Guidelines sentence is warranted based on the defendant's offense conduct alone.

   The defendant's history and characteristics, and the need for deterrence, also warrant a Guidelines sentence. First, as detailed in the PSR, in July 2022, the defendant was convicted in the Southern District of New York after a jury trial of transmitting interstate threats on or about December 4, 2018, in violation of 18 U.S.C. § 875. See PSR ¶ 46. That conviction stems from the defendant's transmission of threatening phone calls to the theater hosting the premiere of Lifetime's "Surviving R Kelly" documentary, which was to be followed by a live panel discussion with several of Kelly's accusers, including Jane Doe. Id. After his other efforts to stop the premiere and panel discussion failed, the defendant called the theater and stated that someone in the theater had a gun and was going to commit a shooting. Id. Due to the defendant's threat, the theater was evacuated and the premiere was cancelled. Id. This dangerous conduct further demonstrates the defendant's willingness to threaten and frighten innocent victims,

including Jane Doe and her mother who also attended the New York premiere, in order to serve his own purposes. Indeed, the defendant's threat to the Surviving R. Kelly premiere was clearly a part of his continued campaign against Jane Doe and other accusers of Kelly in a criminal effort to protect Kelly.

Moreover, the defendant's recent criminal activity was in no way aberrational. To the contrary, he has a lengthy criminal history that dates back to 1993, which his criminal history category of I does not adequately take into account. Indeed, since 1993, the defendant has been arrested over twenty-five times and convicted seven times. The defendant's arrests include arrests for multiple assaults, thefts, and batteries, and a robbery. See PSR ¶¶ 51-69. His convictions include disorderly conduct, resisting arrest, possession of forged identification documents, and marijuana distribution. See id. ¶ 46. Despite this consistent criminal behavior, the defendant has never served a meaningful custodial sentence. The leniency he has received to date has clearly failed to deter him from committing additional crimes.

Finally, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense require a Guidelines sentence. Those who would resort to threats, harassment and intimidation to prevent victims from pursuing legal remedies must be met with substantial punishment. Victims, particularly those of crimes related to sexual assault and abuse, are often reluctant to come forward, let alone pursue legal recourse, given the trauma and stigma associated with publicly discussing their experiences. Here, Jane Doe's trauma was compounded by the defendant threatening to, and then, in fact, publicly posting, sexually explicit photographs of her that were taken during the course of her abuse by Kelly. If victims are concerned that this type of conduct will not be adequately punished, it could chill victims from pursuing legal remedies and from cooperating with law enforcement investigations. This type of conduct cannot be tolerated under the law.

IV.   Conclusion

For the foregoing reasons, the Court should impose a sentence within the undisputed applicable Guidelines range of 24 to 30 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:  _____/s/_____
Anna L. Karamigios
Assistant U.S. Attorney
(718) 254-7000

cc:   Clerk of the Court (AMD) (by ECF)
Michael G. Freedman, Esq. (by ECF)
Frank Nikolaidis (by e-mail)

6