UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                       :

**DONNELL RUSSELL**,

                            Petitioner,

            – against –

**UNITED STATES OF AMERICA**,

                            Respondent.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

20-CR-427 (AMD)

**ANN M. DONNELLY**, United States District Judge:

Before the Court is the *pro se* petitioner's motion to vacate his conviction pursuant to 28 U.S.C. § 2255. The petitioner argues that his attorney was ineffective, that he is entitled to bond, and that the Court should reduce the fine it imposed as part of the sentence. For the following reasons, the motion is denied.

## BACKGROUND

### I.    Criminal Conduct

The petitioner is a self-described "artist-turned businessman," as well as singer Robert Kelly's manager, advisor, and friend. (ECF No. 47 at 13; ECF No. 52 at 2.) On May 21, 2018, one of Kelly's victims[1] sued Kelly in New York County Supreme Court. (ECF No 52 at 2.) For more than a year, the petitioner threatened and intimidated the victim and her family. For example, the petitioner sent a letter to the victim's lawyers at their Brooklyn office, in which he threatened to publicize explicit photographs and texts if the victim did not drop the case against Kelly. (*Id.* at 2–3.) He also sent the victim and her mother threatening emails and text messages

---

[1] Kelly was convicted of racketeering and violations of the Mann Act. *United States v. Kelly*, No. 19-CR-286, ECF No. 238 (E.D.N.Y.).

and created a Facebook page to which he uploaded text message exchanges that contained sexually explicit photographs of the victim. (*Id.* at 3–4.) He also displayed the materials in a pair of YouTube interviews. (*Id.* at 4.)

The petitioner was charged with interstate stalking, in violation of 18 U.S.C. § 2261A(2)(B). (ECF No. 11.) Separately, the petitioner was convicted after a jury trial in the Southern District of New York with interstate threatening to cause physical harm for calling in an active shooter threat during a Manhattan screening of "Surviving R. Kelly," a documentary that exposed Kelly's criminal conduct. *United States v. Russell*, No. 20-CR-538, ECF Nos. 8, 69 (S.D.N.Y.).

## II.    Proceedings

In an April 2022 letter, the government notified the Court that the petitioner's attorney Michael Freedman had a potential conflict of interest because he discussed representing Kelly. (ECF No. 26.) The Court appointed Norah Hirozawa of the Federal Defenders to advise the petitioner in connection with the conflict; in a May 19 court appearance, the Court described the nature of the potential conflict and directed the petitioner to consult with Ms. Hirozawa about whether he wanted to continue with Mr. Freedman. (*ECF Minute Entry dated May 19, 2022.*) The parties appeared at a conference about a week later, and the petitioner advised the Court that he wanted Mr. Freedman to represent him. (*ECF Minute Entry dated May 25, 2022.*)

On July 26, 2022, the petitioner pled guilty to the indictment pursuant to a plea agreement. (ECF No. 52-1.) As a part of that agreement, the petitioner agreed that his estimated Guidelines sentence was 24 to 30 months, which included an enhancement for committing an offense with a pattern of "stalking, threatening or harassing the same victim." (*Id.* ¶ 2.) The petitioner also "agree[d] not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court

2

imposes a term of imprisonment of 33 months or below." (*Id.* ¶ 4.)  The agreement provided that nothing would "preclude the [petitioner] from raising a claim of ineffective assistance of counsel in an appropriate forum." (*Id.*)

In pleading guilty, the petitioner affirmed under oath that he "had enough time to talk with [Mr. Freedman] about whether or not to plead guilty." (ECF No. 52-2 at 7.)  When the Court asked if he was "fully satisfied with the counsel and the representation that [Mr. Freedman] ha[d] given [him] in this case," he replied, "Absolutely." (*Id.*)  Mr. Freedman confirmed that he "discussed the case with" the petitioner and that the petitioner "underst[ood] the rights that he[ was] giving up by pleading guilty." (*Id.* at 5–6, 11.)  After determining that the petitioner was "aware of the nature of the charges and the consequences of pleading guilty" and that "his plea is knowing and voluntar[y]," the Court accepted his guilty plea. (*Id.* at 25–26.)

On November 17, 2022, the Court imposed a below-Guidelines sentence of 20-months' imprisonment and one year of supervised release. (ECF No. 34.)  The Court also imposed a $5,000 fine. (*Id.*)[2]

### III. Post-Sentencing Motions

On September 21, 2023, the petitioner filed a *pro se* motion to vacate his conviction pursuant to 28 U.S.C. § 2255. (ECF No. 47.)  The petitioner argued that Mr. Freedman was ineffective because he "advised [the petitioner] to plead guilty before [he] conducted an investigation of [his] defenses in the case." (*Id.* at 16.)  The petitioner asserts that Mr. Freedman should have alerted him to four potential defenses: (1) actual innocence; (2) improper venue; (3) statutory vagueness; and (4) First Amendment challenges. (*Id.* at 17–18.)

---

[2] On December 19, 2022, Southern District of New York Judge Paul G. Gardephe imposed a concurrent 12-month sentence with two years of supervised release for calling in the active shooter threat. *United States v. Russell*, No. 20-CR-538, ECF No. 96 (S.D.N.Y.).

3

On October 2, 2023, the petitioner moved for "bail pending resolution of his 2255 petition." (ECF No. 48.) The petitioner argued that his ineffective assistance of counsel claim — particularly his improper venue argument — amounted to a "substantial claim of law" for which "there is a high probability of success." (*Id.* at 1.) He also asserted that he faced "unique personal safety issues" that constituted "exceptional circumstances." (*Id.*)

On December 21, 2023, the government filed a letter opposing both motions. (ECF No. 52.) On January 9, 2024, the petitioner asked the Court to reduce the $5,000 fine because of a "10.3 [million-dollar] default judgment entered 1/20/2023 by the Supreme Court of New York as a result of this case" and other "ongoing legal expenses." (ECF No. 54.)

## LEGAL STANDARD

Under 28 U.S.C. § 2255, a "prisoner in custody under sentence of a [federal] court" may "move the court which imposed the sentence to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The Court must "vacate and set the judgment aside" if the Court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).

Generally, "a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) (citations omitted); *see also Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) ("A § 2255 petition may not be used as a substitute for direct appeal.") (citations omitted). However, because the district court is "the forum best suited to . . . determine[e] the adequacy of representation," an "ineffective-assistance-of-counsel claim may be brought in a collateral

4

proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500 (2003).

Courts affords *pro se* litigants "special solicitude." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). "[I]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (quoting *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)).

## DISCUSSION

### IV. Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test outlined in *Strickland v. Washington*: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001). "[T]here is no reason for a court . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland.* 466 U.S. at 697.

The first prong requires a petitioner to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at

5

690.  The question then is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*  A court's "scrutiny of counsel's performance must be highly deferential" and should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

In the failure to advise context, "the likelihood that such a defense or motion would have succeeded . . . is highly relevant." *United States v. Keith*, No. 15-CR-827, 2017 WL 11681947, at *5 (S.D.N.Y. Aug. 18, 2017), *aff'd*, 765 F. App'x 526 (2d Cir. 2019).  Courts will reject ineffective assistance claims when the defenses or legal arguments supporting that claim are meritless. *United States v. Vega*, No. 7-CR-707, 2012 WL 1925876, at *6 (E.D.N.Y. May 24, 2012) ("[A]ny motion to suppress the evidence seized from the hard drives of defendant's laptop would have been meritless, if not frivolous.  Accordingly, counsel's failure to pursue such claims did not fall outside of the 'wide range of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)); *Jamison v. Senkowski*, 204 F. Supp. 2d 610, 613 (S.D.N.Y. 2002) ("Petitioner's arguments are unavailing because he cannot show that even if his attorney did fail to alert him to such defenses, such a failure falls below objective standards of reasonableness.  In short, [the petitioner] has not shown that these defenses were in fact viable.").  The first prong "is not satisfied merely by [a petitioner's] testimony that he would have gone to trial had he known of the defense" that counsel allegedly failed to raise. *Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991).

The petitioner argues that Mr. Freedman was ineffective because he did not alert him to four potential defenses.  (ECF No. 47 at 17–18.)  Notably, the petitioner's current claims about his lawyer conflict with his statements at sentencing, where he described Mr. Freedman as "a

6

great fighter" who wanted to take this case to trial, and that it was the petitioner who insisted on pleading guilty. (ECF No. 52-3 at 28, 34.)[3]

In any event, the defenses the petitioner claims his lawyer should have raised are meritless, so counsel could not have been ineffective for not pressing them or advising the petitioner to assert them.

### a. Actual Innocence

The petitioner asserts that Mr. Freedman did not advise him that he could claim actual innocence. (*Id.* at 17.) The petitioner says that he is actually innocent because his conduct was merely "litigation misconduct" "within the space of a response to a lawsuit and a corresponding publicity campaign" against Kelly. (*Id.*) The petitioner relies on *Kim v. Kimm*, in which the Second Circuit held that "allegations of frivolous, fraudulent, or baseless litigation activities— without more—cannot constitute a RICO predicate act." 884 F.3d 98, 104 (2d Cir. 2018).

The petitioner pled guilty to interstate stalking under 18 U.S.C. § 2261A(2)(B), which has three elements: (1) use of the "mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce" in a "course of conduct;" (2) with intent to harass or intimidate; and (3) which causes emotional distress to the victim. A "course of conduct" is "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).

---

[3] The petitioner said at sentencing, "That's why when Mike came to me and said, Don, we're going to fight this, I said, you know what, I don't have a fight for this because I didn't know this was coming, one. I acted out of character in a lot of instances towards this. I'm not going to waste [the prosecutor's] or anybody else's time with this. Let's get this over with. Let's get this to a point where we could sit down, discuss this like — let the courts know who I am as a person, and if they see fit that I — whatever they see fit, I'm willing to accept that." (*Id.* at 28; *see also id.* at 34 ("You know, I've … got Mike who I feel like was a great fighter, but I said, Mike, there's no need for you to fight this. Let's just go on and deal with this. Let me talk to the Court and hopefully they'll respect my position on this and understand it.").)

7

The petitioner admitted each element when he pled guilty. He admitted that in an effort to induce the victim to drop her lawsuit against Robert Kelly, he threatened her and her mother by letter and text messages, sent embarrassing photographs of the victim, published those photographs on Facebook, and displayed them during YouTube interviews. (ECF No. 52-2 at 21–25.) He also admitted that he engaged in a "course of conduct with the intent to harass and intimidate [the victim] and [an] immediate family member of [the victim]." (*Id.* at 25.) Based on this allocution, the Court concluded that there was "an independent factual basis to support the plea that includes the essential elements of the offense." (*Id.* at 26.)

The petitioner's characterization of his crime as "litigation misconduct" is unavailing. (ECF No. 47 at 17.) The "litigation activities" at issue in *Kim*, upon which the petitioner relies, included "preparing, signing, and filing" declarations to which the defendants swore. *Kim*, 884 F.3d at 103. What the petitioner did — intimidating and threatening the victim and her mother in order to force them to drop a lawsuit against Robert Kelly — was not "litigation misconduct;" it was internet stalking, just as the petitioner admitted when he pled guilty.

b.  **Venue**

The petitioner argues that Mr. Freedman should have challenged venue because "none of the allegedly criminal acts committed by [the petitioner] occurred" in this district. (ECF No. 47 at 17.) Rather, he says, "at all times relevant to this case" he lived in Chicago, and "[n]one of his communications passed through" this district. (*Id.*)

"[T]he government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. "Venue may lie in more than one place if 'the acts constituting the crime and the nature of the crime charged implicate more than one location.'" *United States v. Lange*, 834 F.3d 58, 68 (2d Cir. 2016) (quoting *United States v. Reed*, 773 F.2d

8

477, 480 (2d Cir. 1985)); s*ee also* 18 U.S.C. § 3237(a) ("[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."). "Because venue is not an element of a crime, the government need establish it only by a preponderance of the evidence." *United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005).

As explained above, the petitioner admitted that he was part of a group that sent the threatening November 2018 letter and embarrassing photographs and texts to the victim's attorney in Brooklyn, New York. (ECF No. 52 at 2–4; ECF No. 52-2 at 21–22, 25). This conduct qualifies as one of the "acts constituting the crime" for which the petitioner was convicted and suffices to establish proper venue in this district. *Lange*, 834 F.3d at 68 (citation omitted).

  c. **Statutory vagueness**

The petitioner argues that his lawyer should have argued, or advised the petitioner, that the internet stalking statute,18 U.S.C. § 2261A(2)(B), is unconstitutionally vague as applied to him under the Fifth Amendment. (ECF No. 47 at 18.) The petitioner claims that he was merely "presenting facts in opposition [to] false claims that were made in court, on social media, and on [TV]," and that he was engaging in a "public relations battle." (*Id.*)

Courts considering as-applied vagueness challenges must "answer two separate questions: whether the statute gives adequate notice, and whether it creates a threat of arbitrary enforcement." *United States v. Wasylyshyn*, 979 F.3d 165, 175 (2d Cir. 2020) (quoting *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006)). This test "requires only that the statutory language conveys sufficiently definite warning as to the proscribed conduct when measured by common

understanding and practices." *United States v. Farhane*, 634 F.3d 127, 139 (2d Cir. 2011) (citations and internal quotations omitted). Courts have found that as-applied vagueness challenges cannot succeed when the conduct at issue "falls within the core of [18 U.S.C. § 2261A's] prohibition." *United States v. Torres*, No. 20-CR-608, 2021 WL 1947503, at *4 (S.D.N.Y. May 13, 2021) (quoting *Farhane*, 634 F.3d at 139), *aff'd*, No. 21-2665-CR, 2023 WL 378942 (2d Cir. Jan. 25, 2023); *see also United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014) ("[The petitioner's] as-applied challenge [to 18 U.S.C. § 2261A(2)(A)] is similarly unavailing given his intent to harass and intimidate a private individual by circulating sexually explicit publications that were never in the public domain."); *United States v. Sayer*, 748 F.3d 425, 436 n.10 (1st Cir. 2014) ("We note that, in any event, § 2261A(2)(A) cannot be unconstitutionally vague as applied to [the petitioner] where there is no doubt that the statute proscribed his course of conduct done with intent to harass and intimidate Jane Doe.").[4]

As explained above, the record shows that the petitioner "use[d] the mail," "interactive computer service[s]" and "electronic communication system[s]" on multiple occasions to "harass" and "intimidate" the victim and her mother into dropping their lawsuit against Robert Kelly. 18 U.S.C. § 2261A(2)(B). There is no question that the petitioner's conduct falls within the "common understanding and practices" of the conduct proscribed by 18 U.S.C. § 2261A(2)(B).

---

[4] These cases analyze 18 U.S.C. § 2261A(2)(A), which shares the intent and course of conduct elements with Subsection (2)(B). The only difference is that Subsection (2)(A) proscribes conduct that places the victim "in reasonable fear of death of or serious bodily injury to a person, a pet, a service animal, or a horse," while Subsection (2)(B) proscribes conduct that causes or attempts to cause "substantial emotional distress." *See* 18 U.S.C. § 2261A(2).

### d. First Amendment Challenges

Last, the petitioner argues that Mr. Freedman should have told him that he could raise facial and as-applied First Amendment challenges to 18 U.S.C. § 2261A(2)(B) on the theory that his threatening conduct was actually "protected petitioning activity." (ECF No. 47 at 18.)

To prevail on a facial First Amendment challenge, a litigant must show that the statute does not "contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002). The Supreme Court cautions that "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

As the government points out, "every federal circuit court to have considered a facial challenge to Section 2261A has rejected that challenge." (ECF No. 52 at 11.) This includes First Amendment challenges to Subsection 2261A(2)(B), which courts have concluded "is not substantially overbroad." *United States v. Fleury*, 20 F.4th 1353, 1363 (11th Cir. 2021); *see also United States v. Yung*, 37 F.4th 70, 81 (3d Cir. 2022) (finding that 18 U.S.C. § 2261A(2)(B) is not overbroad and "join[ing] every other circuit that has evaluated the law"); *United States v. Ackell*, 907 F.3d 67, 78 (1st Cir. 2018) ("[I]t cannot be so that § 2261A(2)(B) is an impermissible content- or viewpoint-based restriction on speech.").

As for the petitioner's as-applied challenge, the Court must "determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022) (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006)). "[C]riminal acts are not protected speech even if speech is the means for their commission." *Packingham v. North*

11

*Carolina*, 582 U.S. 98, 107 (2017); *see also United States v. Stevens*, 559 U.S. 460, 468 (2010) (noting that "speech integral to criminal conduct" is one of the traditional areas of speech that is not entitled to First Amendment protection).

In *United States v. Sergentakis*, the court denied an as-applied challenge to 18 U.S.C. § 2661A(2)(B), finding that "[a]ny expressive aspects of [the defendant's websites, letters, and emails described herein] were not protected under the First Amendment because they were integral to criminal conduct in intentionally harassing, intimidating or causing substantial emotional distress." No. 15-CR-33, 2015 WL 3763988, at *7 (S.D.N.Y. June 15, 2015) (alteration in original) (quoting *Osinger*, 753 F.3d at 947), *aff'd*, 787 F. App'x 51 (2d Cir. 2019). The court emphasized that "[a]lthough some of the defendant's statements could be protected by the First Amendment in other circumstances, these were not statements made purely for altruistic reasons . . . but instead followed shortly after the defendant's 2006 guilty plea, for which he blamed [the victim]." 2015 WL 3763988, at *6.

In threatening and intimidating the victim and her family, the petitioner was obviously not acting "purely for altruistic reasons." Rather, his communications were part of a sustained effort to intimidate the victim and her family, and to pressure them to drop the case against Robert Kelly.[5]

The petitioner has not established that his attorney was ineffective.

## V.     Motion to Reduce Fine

The petitioner asks the Court to reduce his $5,000 fine because he has "experienced an upheaval in finances" attributable to a "10.3 [million-dollar] default judgment" in New York

---

[5] Nor was the petitioner's conduct "petitioning activity." (ECF No. 47 at 18.) Under the First Amendment, petitioning encompasses only the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. It does not apply to communications with private citizens.

state court, as well as other "ongoing legal expenses [and] disrupted business ventures." (ECF No. 54 at 1.)

"A fine is an independent part of a defendant's sentence." *United States v. Akinrosotu*, 637 F.3d 165, 167 (2d Cir. 2011). Courts considering similar motions have expressed "doubts about their authority to terminate a fine" because the fine is a part of the sentence, and because "a court may not resentence a defendant unless expressly mandated by the circuit court . . . or pursuant to the strict conditions established by Fed. R. Crim. P. 35 or 36, or some other federal statute." *United States v. Mejia Gonzalez*, No. 09-CR-719, 2022 WL 1036630, at *2 (E.D.N.Y. Apr. 6, 2022) (cleaned up) (quoting *United States v. Spallone*, 399 F.3d 415, 421 (2d Cir. 2005)); *see also United States v. Martinez*, 281 F. App'x 39, 41 (2d Cir. 2008) (finding that the district court could not reduce the defendant's fine pursuant to 18 U.S.C. § 3583(e) or 18 U.S.C. § 3572(d)(3) under the circumstances).

The Court cannot discern any statutory basis for granting the petitioner's request. Accordingly, the petitioner's motion to reduce his fine is denied.[6]

## CONCLUSION

For the reasons set forth above, the defendant's motion to vacate his conviction pursuant to 28 U.S.C. § 2255(a) is denied, and his motion for bond is denied as moot. Because the defendant has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to close the civil action.

---

[6] The petitioner's motion for bond is moot because he has been released from custody.

**SO ORDERED.**

                                                                                                        s/Ann M. Donnelly

                                                                                                  ANN M. DONNELLY
                                                                                                  United States District Judge

Dated:  Brooklyn, New York
           February 19, 2025